UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===============

Cathy Jo Borck,

                              Plaintiff,

            v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

18-CV-1183 HBS
(Consent)

===============

## I.    INTRODUCTION

        The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court

has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in

brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 9,

10.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the

"Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or

Supplemental Security Income under Title XVI, of the Social Security Act.  The Court has deemed

the motions submitted on papers under Rule 78(b).

## II.    DISCUSSION

        "The scope of review of a disability determination . . . involves two levels of inquiry.  We

must first decide whether HHS applied the correct legal principles in making the determination.  We

must then decide whether the determination is supported by substantial evidence."  *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district

court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as "'more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff criticizes the ALJ for relying on his own lay opinion to determine an RFC, in the absence of any medical source statements or other medical opinions. The ALJ found that plaintiff had the severe impairments of depression, chronic lumbar pain, and chronic bilateral knee pain. [41.] After reviewing the medical records, the ALJ decided that plaintiff did not meet or equal any medical listings and that she was capable of light work so long as she was "limited to performing simple, routine tasks and simple work-related decisions." [43.] Plaintiff argues that the ALJ must have used his own opinion to interpret raw clinical data since no medical opinion about her exertional capabilities appears in the record:

> In this case, Plaintiff has impairments that are far beyond a common sense evaluation. Imaging of the lumbar spine showed endplate spurring and facet arthropathy. T 291. It also showed osteophyte and disc bulge. T 291. Examinations revealed her back was often tender to touch. T 295, 300, 306, 311, 319, 326, 332, 399, 455, 472, 608. They also revealed tenderness in the knees. T 295, 300, 311, 319, 327, 332. She had abnormal knee motion. T 306, 311, 319, 631. She had a positive straight leg test. T 332. She had corticosteroid injections in her knee. T 315, 323. Her knee would pop when she went upstairs. T 299. Her treating source found Plaintiff had "failed conservative treatment" for her back. T 320. She was prescribed Gabapentin and Norco. T 296, 384. She had a nerve impingement. T 380. She had compression arthralgia. T 293. She had tenderness and pain in the hips. T 294, 631. As for mental health, she also had impairments. She was diagnosed with depressive disorder. T 270. She was prescribed Celexa. T 269. She was positive for severe depression on the ZUNG scale. T 412. She avoided people. T 84, 87, 277. She was frustrated easily and would cry when she would worry. T 84, 279. Without any opinion, the ALJ's RFC is based on his own lay opinion, which is harmful error.

(Dkt. No. 9-1 at 12–13; *see also* Dkt. No. 11 at 3.) The Commissioner counters that "the regulations direct ALJs, not medical sources, to assess residual functional capacity based on all of the evidence of record, including medical and non-medical evidence." (Dkt. No. 10-1 at 9.) The Commissioner also argues that the medical record as a whole supported the RFC even without specific opinions about capacity from any treatment providers:

> Plaintiff first argues that substantial evidence does not support the ALJ's RFC finding (Pl. Br. 10-16). However, the ALJ's analysis more than satisfies the

"not high" substantial evidence standard. The ALJ noted that, despite alleging disability since 2009, Plaintiff did not even report back or knee pain until 2012, start psychiatric medications until 2014, or start counseling until 2017 (Tr. 40-41, *see* Tr. 77-78, 343, 415, 472-76). The ALJ cited the lumbar spine MRI that showed just "minimal" and "mild" findings and the knee x-rays that were normal (Tr. 40, *see* Tr. 291-92, 340). The ALJ cited various examinations showing, among other normal findings, normal gait, strength, memory, and attention (Tr. 40-41, *see* Tr. 295, 343, 389, 630-31, 634). The ALJ noted that Dr. Walter observed that reported pain on range of motion testing was "disproportionate" to the physical findings (Tr. 40, *see* Tr. 631). The ALJ noted that Plaintiff reported improvement from injections and no or minimal pain during several visits (Tr. 40-41, *see* Tr. 309, 315-16, 380). The ALJ noted that, at the time of the hearing, she was not taking pain medication, attending physical therapy, or using any braces (Tr. 40, *see* Tr. 75-77). The ALJ also pointed to a complete gap in treatment from September 2014 to April 2015 (Tr. 40-41, *see* Tr. 634). The ALJ also pointed to Plaintiff's activities during the relevant period, including helping family members clean out their homes and caring for her child (Tr. 40, *see* Tr. 85, 634).

(*Id.* at 8.)

The Commissioner has the better argument here. "If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence." 20 C.F.R. § 404.1520b(a); *see also* 20 C.F.R. § 416.920b(a) (same). "We will assess your residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. § 416.945(a)(3) (same). In 2013, plaintiff presented with some social avoidance and some grooming issues but also with normal patterns of speech and a willingness to improve cognitive/behavioral skills. [281.] In 2014, plaintiff had an abnormal gait but normal strength and normal cervical and lumbosacral spine motion. [299, 309, 314.] Plaintiff had some knee pain and tenderness. [310.] Also in 2014, plaintiff's depression was acknowledged, but she did present with good grooming. [315, 329.] In September 2014, plaintiff presented at an examination with full range of motion in all joints; a normal mood and affect; and a normal attention span and level of concentration. [351.] There was some concern about adjusting depression

medication to control plaintiff's symptoms better.  [356.]  Critically, to address plaintiff's concern

about the presence or absence of medical opinions, an examination in October 2013 contained an

explicit medical opinion that plaintiff should avoid heavy lifting.  [409; *see also* 415.]  *Cf. Lewis v.*

*Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (summary order) ("As a preliminary matter, the ALJ's

determination that [plaintiff] could perform 'light work' is supported by [a physician's] assessment of

'mild limitations for prolonged sitting, standing, and walking,' and direction that [plaintiff] should

avoid 'heavy lifting, and carrying.'"); *accord Crosby v. Berryhill*, No. 16-CV-6300 (MAT), 2017 WL

3065271, at *2 (W.D.N.Y. July 18, 2017) ("The ALJ limited plaintiff to light work, which is fully

consistent with his physician's recommendation that he avoid heavy lifting.").  An examination in

2015 showed that plaintiff had depressed mood and affect but had appropriate overall behavior.

[634.]  Plaintiff reported some pain in her back, knees, and neck.  [633.]  Plaintiff had good mobility

in all of her extremities and had no focal deficits.  [635.]  The Commissioner has cited other portions

of the record as well, and the clinical notes as a whole show a consistent profile: no restrictions on

activity that avoids heavy lifting and that is consistent with someone managing depression.  *Cf.*

*Tankisi v. Comm'r*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) ("The medical record in this

case is quite extensive.  Indeed, although it does not contain formal opinions on Tankisi's RFC from

her treating physicians, it does include an assessment of Tankisi's limitations from a treating

physician, Dr. Gerwig.  Given the specific facts of this case, including a voluminous medical record

assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we

hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request

medical opinions in assessing residual functional capacity.") (citations omitted).  The record here

required no interpretation at the level that caused concern in *Brown v. Apfel*, 174 F.3d 59 (2d Cir.

1999).  *See id.* at 63 (ALJ decided on his own that plaintiff's "seizures were caused by a failure to take

his medication" when no treatment provider said so). Plaintiff's clinical profile is consistent with the regulatory description of light work: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b) (same). Substantial evidence thus supported the ALJ's RFC, and more detailed medical source statements were not necessary. *See also* [90] ("Honestly, I don't have a weight limit because I don't see it as—I mean I've been told not to lift anything over at least 15 pounds, but I'm not going to stand there if my daughter wants me to hold her and say no.").

Next, plaintiff argues that the ALJ improperly evaluated her credibility. Plaintiff highlighted her testimony about pain and her abnormal examination findings. "These were objective findings and signs that were, in fact, consistent with her subjective complaints and not inconsistent as the ALJ concluded without explanation." (Dkt. No. 9-1 at 17–18.) The ALJ, in plaintiff's view, also erred in labeling her testimony inconsistent because she was capable of caring for her daughter at home. "Plaintiff testified she was able to care for her daughter when she was first born, but as she got older, the pain got worse and she could not anymore. T 85. She testified she was told not to lift anything over 15 pounds but she would occasionally hold her daughter. T 86. To find her less credible because she 'bore' a child and occasionally held that child is nothing less than harmful error." (*Id.* at 19.) The Commissioner responds that plaintiff is ignoring the broader context that the ALJ considered:

> Plaintiff next argues that, in evaluating her subjective allegations, the ALJ did not consider the factors outlined in 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2) and simply pointed to the fact that she "bore" a baby in 2010—something that does not demonstrate she could work on an ongoing and continuous basis (Pl .Br. 16-18). However, to start, the ALJ did not rely on the fact that she gave birth; he relied on the fact that she was able to care for the child (Tr. 41). As Plaintiff testified, "My daughter was born in January 2010. I was able to take care of her fully, play with her, everything" (Tr. 85). The Second Circuit indicated in *Poupore v. Astrue*, 566 F.3d at 307, that the ALJ properly cited evidence of caring for an infant as undermining a claimant's allegation that he could not perform light work. And while Plaintiff

7

asserts she subsequently declined as the child has grown, she is alleging disability since 2009, before the child was born, so the activity still undermines her allegation that she has been unable to work since 2009. In any event, a quick review of the decision confirms that the ALJ did not rely solely on her ability to care for her child. Directly above his statement about childcare, the ALJ cited the minimal objective evidence and treatment history (Tr. 41). Prior to that, as cited above, the ALJ pointed to Plaintiff's minimal objective findings and Plaintiff's failure to regularly seek treatment, report significant symptoms, use medications, and pursue physical therapy, counseling, and other treatments (Tr. 40-41). This closely tracks the regulations, which require an ALJ to consider both objective evidence and other factors such as medicinal and non-medicinal treatment. 20 C.F.R. §§ 404.1529(c)(2), (3)(iv)&(5), 416.929(c)(2), (3)(iv)&(v). Ultimately, it is well within the ALJ's discretion to evaluate Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology. *Mimms v. Sec'y of Health and Human Servs.*, 750 F.2d 180, 186 (2d Cir. 1984). Given the above, Plaintiff has failed to establish an abuse of that discretion.

(Dkt. No. 10-1 at 11–12.)

The Commissioner again has the better argument. While plaintiff focused repeatedly on the term "credibility," the ALJ was careful to focus on consistency with the overall record. *See generally* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017). As for consistency, the ALJ reviewed multiple clinical records, cited above, in which treatment providers noted plaintiff's depression and pain while also finding appropriate behavior; generally good if somewhat dulled affect; and good strength and range of motion with no limitations beyond avoiding heavy lifting. In short, no clinical records matched statements from plaintiff's testimony such as an inability to stand for more than 15 minutes at a time. [89.] The ALJ was permitted to resolve this discrepancy in favor of the overall clinical record. At the same time, the ALJ added the limitation of simple, routine tasks to the RFC of light work as a way of crediting plaintiff's testimony that "I can't deal with people a lot" [78] and that she would have trouble driving a car because "[s]ometimes I actually forget which one's the gas and which one's the brake" [85].

Finally, plaintiff argues that the Appeals Council improperly rejected new evidence that she submitted after the date of the ALJ's decision. "Plaintiff suffered from depression and it was found to be a severe impairment. T 37. The record submitted from Niagara Memorial Medical Center was rejected for the sole reason that it came after the ALJ's decision. T 2. This evidence shows Plaintiff was discharged with depression and suicidal ideation, given the number for crisis services, and prescribed Paroxetine. T 19-31. This relates to her depression. It shows she had a visit for suicidal ideation and had major depressive disorder. T 19-31." (Dkt. No. 9-1 at 21.) The Commissioner responds that the new evidence is not contemporaneous to the relevant period:

> While Plaintiff is correct that evidence post-dating the period can be relevant, this evidence was not. Nothing in the records even purports to be retrospective. On the contrary, Plaintiff's report of suicidal thoughts is an entirely new symptom she has never reported before. Evidence indicating a claimant's condition worsened after the relevant period is insufficient to establish disability. *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). In any event, even if pertaining to the relevant period, remand would not have been appropriate because it would not have changed the outcome—another requirement for materiality. *Pollard*, 377 F.3d at 193. This record provides almost no information except to note that Plaintiff reported suicidal ideation (Tr. 19). There is no indication that staff believed her ideation to be serious—they discharged her the same day and placed no restrictions on her activity level (Tr. 19).

(Dkt. No. 10-1 at 13.)

The Commissioner, through the Appeals Council or otherwise, has the ability to review or to reopen a claim based on new and material evidence. *See* 42 U.S.C. § 405(g); 20 C.F.R §§ 404.970(a)(5), 416.1470(a)(5), 404.988(b), 416.1488(b), 404.989(a)(1), 416.1489(a)(1). "The Social Security Act provides that a court may order the Secretary to consider additional evidence, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. Thus, an appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time

9

period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted). Here, the new evidence that plaintiff has presented is both cumulative and immaterial. A September 28, 2018 examination found plaintiff with neck pain and lower back pain, and with fluent and appropriate speech. [12.] A January 11, 2018 clinical visit because of a fall off of a porch uncovered back pain but no behavioral or psychiatric distress. [18.] Plaintiff was not admitted. [18.] Finally, a clinical visit on November 29, 2017 summarized a discharge diagnosis as "depression with suicidal ideation." [23.] Plaintiff was given a new antidepressant and contact information for Niagara County Crisis Services [24–25], but the discharge summary otherwise was unremarkable. Consequently, the new evidence would not have changed what the ALJ already knew: Plaintiff had chronic neck and back pain as well as depression severe enough to require medication. The Appeals Council thus committed no error in declining to reevaluate the ALJ's decision.

III. **CONCLUSION**

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 10) and denies plaintiff's cross-motion (Dkt. No. 9).

The Clerk of the Court is directed to close the case.

SO ORDERED.

___/s Hugh B. Scott_____

Hon. Hugh B. Scott
United States Magistrate Judge

DATED: March 13, 2020